MAYOR, ETC., OF NEW YORK, Respondent, *v.* COLLIS P. HUNTINGTON, Appellant.

*N. Y. Court of Appeals, June 4, 1889.*

Affirming 1 N. Y. State Rep. 785.

*Contract. Lease.*—In an action to recover the stipulated rent, a purchaser, by taking possession of the pier, and enjoying the right of collecting wharfage solely by virtue of the contract made by him with the department of docks, cannot be permitted. to question the agreement under which he has elected to take the benefits accruing to him as purchaser, and is estopped from contesting with his lessor the validity of the contract under which he has acquired possession of leased property.

Appeal from a judgment of the general term of the superior court of the city of New York, affirming a judgment in favor of the plaintiff entered upon the decision of the court.

*Francis Lynde Stetson*, for appellant.

*David J. Dean*, for respondent.

PARKER, J.—This action was brought to recover $17,500, claimed to be due for one-quarter's rent of certain premises belonging to the city, known as pier 37, North river.

The trial court rendered judgment in favor of the plaintiff.

An appeal to the general term resulted in an affirmance.

The appellant contends that the transaction between the plaintiff's officers and the defendant, on the 27th day of April, 1883, in legal effect was a contract for the sale and purchase of a lease, which was to be executed before the inception of the term for which the premises were to be

demised; that the delay in the execution was solely the fault of the plaintiff, and that by reason of the premises no right to rent as such would, or could, accrue to the plaintiff.

The question presented, therefore, requires an examination of the transactions had between the parties, for the purpose of ascertaining their legal effect.

Prior to the 27th day of April, 1883, the department of docks advertised that on that date it would sell, at public auction, the right to collect and retain all wharfage of pier (new) No. 37, North river, for ten years, from May 1, 1883. It was further provided in such notice " that the lease for this pier will covenant for a renewal term of ten years at an advanced annual rental, such increase to be five per cent. on the rental for the first term. The right to shed the said pier will be granted by the department, and the same will be appropriated for special kinds of commerce, as required by law."

The notice of sale further provided that the purchaser would be required to agree that he would, upon being notified so to do, execute a lease, prepared upon the printed form adopted by the department, which can be seen upon application to the secretary at the office, 119 Duane Street; that the purchaser would be required to pay the rent, quarterly in advance, in compliance with a stipulation therefor in the form of lease adopted by the department; that two sureties, to be approved by the commissioners of docks, would be required upon the lease to enter into a bond jointly with the lessee in a sum double the amount of the annual rent, conditioned for the faithful performance of all the covenants of the lease; and that, at the time of sale, the purchasers should pay to the department of docks twenty-five per cent. of the amount of annual rent bid, as security for the execution of the lease, such sum to be applied in payment of the first rent accruing, or to be forfeited if the purchaser should refuse to execute the lease

18

and bond within five days after being notified that the lease and bond were ready for signature.

At the sale the defendant became the purchaser at the rental of $70,000 per annum, and thereupon paid the plaintiff $17,500 as required by the terms of sale, and received a receipt therefor, which read as follows :

" Received for the corporation of the city of New York by the department of docks from C. P. Huntington $17,500, being twenty-five per cent. of the annual rent bid for the right to collect wharfage at pier (new) No. 37, North river, subject to all the terms and conditions stated in the published notice of sale held this day.

" JOHN R. VOORHIS,

" *Treasurer pro tem.*

" NEW YORK, *April* 27, 1883."

Simultaneously with the payment of the $17,500 and the delivery of the foregoing receipt, said defendant executed and delivered to the department of docks the following :

" NEW YORK, *April* 27, 1883.

" The undersigned having purchased at public sale, held this day, the right to collect wharfage at pier (new) No. 37, North river, for the annual rent of $70,000, during the period for which said right was then sold, subject to all the terms and conditions set forth in the printed notice for said sale, does hereby agree that the necessary lease of the said right of the above-named premises, the printed form for which has been duly examined, will be executed as soon as notice shall be given that it is prepared and ready for signature ; and it is further understood and agreed that until the said lease shall be executed, all the terms, conditions and covenants contained therein shall be held to be as binding and of the same effect as though the lease was signed and executed. The following named persons are

proposed for sureties for the faithful performance of the covenants of said lease, to wit :    \*    \*    \*

(Signed)        " C. P. HUNTINGTON,

"23 Broad street.

" Witness FRANCIS E. MOON."


Now what were the rights of the parties after this sale to the defendant as the highest bidder, and payment by him of the percentage required by the terms of sale ?

The defendant had agreed to pay $70,000 a year for ten years, in quarterly payments, in advance, on the day of the sale and the first days of August, November, February and May thereafter.

The dock department had agreed to allow the defendant to collect wharfage at pier 37, North river, for ten years from May 1, 1883, and to enter upon the pier, and occupy it for such purpose.

The term for which the right to collect wharfage would be sold was fixed by the department prior to the sale.    The power to change the term sold either by lengthening or shortening it was not vested in the department.    It is not pretended that they attempted to change the term.

The authority to sell was conferred by statute, and the defendant must be presumed to have known that the dock department lacked the power to change the term after sale made.

He agreed then to purchase that which the dock department agreed to sell, not for an indefinite period, beginning at the date of the execution of a lease sometime thereafter to be drafted and executed, but for a fixed term of years, and commencing on the first day of May, following.    There was a further agreement between the parties.

In order to secure faithful performance in the payment of rent, the defendant agreed to procure two sureties, to be approved of by the dock department, who should, upon the lease, enter into a bond jointly with him, conditioned for

the due performance of all the covenants of the lease, while the dock department agreed to give to the defendant a lease defining fully the exact relations of the parties.

Now, while the terms of sale definitely fixed the date when the purchaser should be entitled to possession of the pier, and succeed to the right to collect wharfage, and also fixed the time for the payment of the first installment of rent, as well as the dates upon which each subsequent payment should be made, they did not mention the time when the lease was to be executed. On the contrary, it is apparent from the terms of sale that it was intended that the lease should be executed subsequent to the sale. Of necessity it had to be. It was not only to be executed by the commissioners of docks, but also by the defendant and his sureties. Before the latter could execute it, the approval of the commissioners as to their sufficiency must be had, and it was provided that the installment of rent paid down should be forfeited if the purchaser neglect, or refuse to execute, the lease and bond within five days after being notified that the lease is prepared and ready for signature.

It was expressly provided, therefore, by the terms of sale, that the dock department should have time to prepare this lease after the sale, and that after being notified of its readiness for execution, the defendant should still have five days within which to execute it.

As the sale was on April 27th, and the term sold began May 1st, had the defendant been notified on that day, he need not have executed the lease until after the beginning of the term purchased. Until the expiration of the five days he would not have been in default, and the plaintiff could not have questioned his right to enter into possession and enjoyment of the premises.

It is apparent from the terms of sale, that the subject of sale, as understood and offered by the dock department, was the right to collect wharfage, and not an instrument giving the right to collect wharfage, and the writing signed

by the defendant at the time and place of sale clearly indicates that the purchaser so understood it.

Unquestionably, as we think, the defendant, not being in default, had the right to enter upon the enjoyment of that which he had purchased on the first day of May, whether the lease was executed or not. Undoubtedly it was his privilege to demand and his right to insist upon the immediate execution and delivery to him of the lease, which the dock department had agreed to give him.

Instead, however, of insisting upon the excution of the lease prior to the commencement of the term purchased, he executed, at the time of sale, a writing, reciting the examination of a printed form of lease, and in which he agreed to execute the lease as soon as notice should be given that it was prepared and ready for signature, and further agreed that until the said lease should be executed, all the terms, conditions and covenants contained therein should be held to be as binding and of the same effect as though the lease was signed and executed.

The counsel for the appellant insists that, in so far as the writing stipulated that until the execution of the lease the purchaser should be bound by the conditions and covenants of the lease examined, and that it should be as binding and of the same effect as though the lease had been signed and executed, it was *nudum pactum*, because not based upon any obligation of the defendant, nor upon any consideration moving from the plaintiff or its officers. We do not deem it necessary to pass upon that question in the disposition of this case. By the execution and delivery of such writing as a whole, the purchaser at least waived an immediate execution of the lease. Subsequently, and on April thirtieth, he sent to the dock department the names of his proposed sureties. May fifteenth, in reply to a letter from purchaser's counsel, of the same date, asking to be informed whenever the lease should be ready for examination and execution, the secretary of the dock department

by letter informed him that the lease was ·being drafted by the counsel to the corporation, and that as soon as prepared, notification would be promptly given. The letter concluded as follows: " I am also requested to call your attention to the fact that Mr. Huntington is entitled to the wharfage accruing at the pier from May first, instant, and that he ought to have some one attend to the collection of it for him."

May twenty-fourth, a draft of the proposed lease was sent to the purchaser's counsel, for examination. Objection was made by the purchaser that the lease provided for rent from May first. Subsequently, and on June thirteenth, the department of docks gave to the purchaser formal notice that the lease was ready for execution, and requested him to call with his sureties and execute the same. The purchaser refused to execute the lease. Objection was not made that the lease failed to conform to the terms of sale. It was simply insisted that the formal notice to execute the instrument not having been given until June thirteenth, rent could only be charged from that time. The department of docks refused to accede to the claim made by the purchaser, and on the contrary insisted that the lease was in exact accordance with the terms and conditions of sale, and the contract of the parties resulting from the purchase thereunder by the defendant, and that to yield to the insistence of the defendant would be in effect the making of a new contract for a shorter term than ten years, and, therefore, not authorized by section 716 of the Consolidation Act of 1882, under and by virtue of which the department of docks acquired the power and authority to lease the property in question.

The defendant, failing in his attempt to induce the dock department to coincide with his expressed views of the legal effect of the contract, as made between the parties, nevertheless, in the early part of August, 1883, took formal possession, and entered upon the enjoyment of the right to

collect wharfage, and still remained in possession at the time of this trial.   The installments of rent due upon the first days of November and February, as provided by the terms of sale, were paid by him, but he refused to pay the installment of rent falling due August first, to recover which this action was brought.   We are of the opinion that, the defendant having taken possession of the property, and entered upon the enjoyment of the right to collect wharfage solely, by virtue of the contract made with him by the department of docks at the public sale, cannot now be permitted to question the agreement under which he has elected to take the benefits accruing to him as purchaser.   That, in an action to recover the stipulated rent, he must be held to be estopped from contesting with his lessor the validity of the contract under which he has acquired possession of leased property.   This question has been so carefully considered in this court, in Whitney Arms Co. *v.* Barlow, 63 N. Y. 62; Woodruff *v.* Erie Railway Co. *et al.*, 93 Id. 609; and the Rider Raft Co. *v.* Roach, 97 Id. 378, as to render further attempt at discussion, or the citation of authority superfluous.

It follows that the judgment appealed from should be affirmed.

All concur.